UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| TONYA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:17-cv-00234-RLY-DML |
| | ) | |
| ENHANCED RECOVERY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON ENHANCED RECOVERY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

If Tonya Jones is to be believed, Enhanced Recovery Company called her at least 170 times over the course of 168 days to collect an outstanding debt. Jones requested that ERC stop calling her at least fifty times, and she informed ERC on at least one occasion that she was homeless and could not pay the debt. To make matters worse, during one of these conversations, an ERC representative directed an expletive at Jones after she told ERC to stop calling her. Now, that might not be what actually happened, but at summary judgment, the court construes the evidence in the light most favorable to Jones. And on that evidence, a jury could find that ERC violated the Fair Debt Collection Practice Act's proscription against harassment and abusive conduct. *See* 15 U.S.C. § 1692d.

**I.    Background**

Some point in 2013 or 2014, Jones fell behind on payments for her T-Mobile account. (Filing No. 49-1, Deposition of Tonya Jones ("Jones Dep.") at 17:13 – 18; 20:4

1

– 6). Several years later, on May 23, 2017, T-Mobile retained ERC to collect the delinquent debt from Jones's account. (*Id.* at 23:9 – 20; *see also* Filing No. 44-1, Declaration of Rocky Landoll ("Landoll Dec.") ¶ 6). ERC is a debt collection company. (Landoll Dec. ¶ 2).

From May 24, 2017 through November 8, 2017, ERC called Jones to collect the debt from her T-Mobile account. (*Id.* ¶ 11; *see also* Filing No. 44-2, ERC Account Notes at 3 – 6). ERC placed at least 170 calls[1] to Jones's cell phone over the course of 168 days. (ERC Account Notes 3 – 6; *see also* Jones Dep. 28:15 – 21). Jones spoke with ERC representatives over fifty times and told them each time to place her on the do-not-call list. (Jones Dep. 29:1 – 5). Jones remembers one time speaking with an ERC representative and getting called an expletive because she told him she could not pay the debt. (*Id.* at 50:16 – 51:3). She recalls another time being confused because the representative identified ERC as "account receivable" when Jones asked who was calling. (*Id.* at 71:25 – 73:12). Jones felt harassed by ERC's collection efforts—particularly when Jones informed ERC she was homeless, yet ERC continued collection efforts a few days later. (*Id.* at 18:15 – 19:1; 37:3 – 13).

Jones filed a complaint on December 13, 2017. (Filing No. 1). She alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* After Jones dismissed her TCPA claims with prejudice, ERC filed a motion for summary

---

[1] The actual number is somewhat disputed. However, both parties agree that it was at least 170 calls. That is enough to resolve the present motion.

2

judgment on her remaining FDCPA claims. (Filing Nos. 40, 43). The motion is fully briefed and ripe for a decision.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 578 (7th Cir. 2019). The court views and draws all reasonable inferences from the evidence in the non-moving party's favor. *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049, 1054 (7th Cir. 2019). A genuine dispute over the facts exists where a jury could return a verdict for the non-moving party. *Burton*, 934 F.3d at 579.

## III. Discussion

ERC moves for summary judgment on all of Jones's claims under the FDCPA. Jones concedes that summary judgment is appropriate on her claims under Sections 1692c(a)(1), 1692f, and 1692f(1), and so the court grants summary judgment to ERC on those claims. (*See* Filing No. 49, Jones's Response at 1). Jones disputes, however, whether summary judgment is appropriate on the rest of her claims.

### A. FDCPA Generally

Congress passed the FDCPA to "eliminate the many evils associated with debt collection." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015). Among these are harassment and misleading communications. *See* 15 U.S.C. §§ 1692d (harassment generally); 1692d(2) (obscene language); 1692d(5) (harassing communications); and 1692d(6) (telephone calls without meaningful disclosures). The

FDCPA is a remedial statute, and so the court construes it broadly in favor of consumer and debtors. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted) (FDCPA is remedial statute and should be construed broadly); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (FDCPA should be construed liberally in favor of consumers).

### B. Harassment Claims

Section 1692d generally forbids debt collectors from engaging in harassing or abusive behavior when collecting a debt. *See* 15 U.S.C. § 1692d; *see also Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 773 (7th Cir. 2003). Section 1692d also specifically identifies certain conduct that amounts to harassment or abuse:

> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> …
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

§ 1692d. Jones contends ERC violated Section 1692d and 1692d(5) by harassing her and calling her repeatedly even though she told ERC otherwise; Section 1692d(2) by using an expletive during one of their conversations; and Section 1692d(6) by failing to meaningfully identify itself as a debt collector. Each warrants a brief discussion.

First, a jury could rationally conclude that ERC violated both Section 1692d and 1692d(5)—the sections prohibiting debt collectors from harassing consumers. ERC

4

called Jones at least 170 times over the course of 168 days; that is nearly once a day for five-and-a-half months. (ERC Account Notes 3 – 6; Jones Dep. 28:15 – 21). Jones told ERC—at least fifty times—to stop calling and to place her on the do-not-call list. (Jones Dep. 29:1 – 5). However, ERC continued calling. It did so even after Jones told ERC she was homeless, and she could not pay the debt. (*Id.* at 18:15 – 19:1; 37:3 – 13). Additionally, on one occasion, an ERC representative directed an expletive at Jones after she told the representative she could not pay the debt. (*Id.* at 50:16 – 51:3). This is sufficient evidence from which a jury could find ERC engaged in harassing conduct under Section 1692d. *See Horkey*, 333 F.3d at 773. It is also sufficient evidence from which a jury could conclude ERC caused a telephone to ring with an intent to annoy, abuse, or harass Jones under Section 1692d(5). *Clark v. Quick Collect, Inc.*, No. CV–04–1120–BR, 2005 WL 1586862, at *4 (D. Or. June 30, 2005) (five calls in nineteen days concerning one debt and eight calls in twenty one days concerning another were questions of fact for the jury under Section 1692d(5)); *Rucker v. Nationwide Credit, Inc.*, No. 2:09–cv–2420–GEB–EFB, 2011 WL 25300, at *2 (E.D. Cal. Jan. 5, 2011) (eighty calls in one year was question of fact for jury), *cf. Grimsley v. Palm Beach Credit Adjusters, Inc.*, 691 F. App'x 576, 580 – 81 (11th Cir. 2017) (four calls in two weeks held insufficient to violate Section 1692d(5)); *Beeders v. Gulf Coast Collection Bureau*, 796 F.Supp.2d 1335, 1338 (M.D. Fla. 2011) (no more than one call every two days held insufficient).

      ERC argues the FDCPA requires *written* requests to cease communications, and so ERC could not have harassed Jones because she never communicated with ERC in

writing. (Filing No. 44, ERC Opening Brief at 8 – 10). Yes and no. Yes, the FDCPA requires a consumer's request to cease communications be in writing, and failure to do so precludes a claim under *Section 1692c*. *See* 15 U.S.C. 1692c(c). But no, that does not preclude Jones from bringing a separate harassment claim under *Section 1692d*. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 n. 10 (9th Cir. 1994) (citations omitted) (noting conduct may be relevant to a harassment claim even in the absence of a separate Section 1692c claim because certain conduct can violate more than one provision of the FDCPA).

ERC next argues that the evidence related to the phone calls shows an intent to collect a debt—not an intent to abuse or harass Jones. A jury might reach that conclusion; but a jury might also reach the opposite conclusion. Because a jury could conclude either way, the court cannot decide the issue of intent as a matter of law, especially considering the question of whether a debt collector placed phone calls with an intent to "annoy, harass, or abuse" often depends on circumstantial evidence and is best left for a jury. *Swearingen v. Portfolio Recovery Associates, LLC*, 892 F.Supp.2d 987, 992 (N.D. Ill. 2012) (collecting cases).

Turning to Jones's second claim, a jury could rationally conclude that ERC violated Section 1692d(2)—the prohibition against obscene language. Jones explained that an ERC representative called her an expletive during one of their conversations:

> Jones: I also recall – remember – remember, I don't know exactly what date it was, one of the people that called me[,] called me out of my name, because I asked them to stop calling me and put me on a do-not-call-list.

6

> Counsel: And he called you what? I'm sorry. What did you say he called you?
>
> Jones: Out of my name.
>
> Counsel: What do you mean by that?
>
> Jones: He called me a cuss word.
>
> Counsel: What did he say?
>
> Jones: A b-[i]-t-c-h.

(Jones Dep. 50:16 – 51:3). That is enough for a jury to find ERC liable. *See Horkey*, 333 F.3d at 773 – 774 (debt collector violated Section 1692d(2) after representative told the debtor's co-worker to "tell [the debtor] to stop being such a [expletive] bitch").

ERC invites this court to disregard Jones's testimony because its telephone system, which purportedly records every call, only contains two recorded conversations between Jones and ERC, and in those two calls, no representative ever called Jones the expletive. However, the court cannot simply discount Jones's testimony because she did not record the call, or she cannot remember the exact date. *See e.g. Brown v. I.C. System, Inc.*, No. 16-C-9784, 2019 WL 1281972, at *4 (N.D. Ill. Mar. 20, 2019) (difference between debt collector's recordings and debtor's deposition testimony was a question of fact for a jury). Jones has evidence that it occurred; ERC has evidence it never occurred. That is a classic factual dispute for the jury. *See also Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (citation omitted) (noting uncorroborated, self-serving testimony, if based on personal knowledge, may create a question of fact).

Finally, with respect to Jones's last harassment claim, a jury could find—although the evidence is thin—that ERC failed to meaningfully disclose its identity under Section 1692d(6). Jones explained that ERC would sometimes identify itself as "ERC" and other times as "Account receivable." (Jones Dep. at 72:1 – 7). She also explained the use of those names was very confusing, and she only discovered "ERC" and "account receivable" were the "same company" after she asked. (Jones Dep. at 72:12 – 22). As further evidence, Jones points to a call placed on November 8, 2017. During that call, an ERC representative sped through the disclosures at the beginning of the call, identifying ERC as a debt collector and identifying the purpose of the call as an attempt to collect a debt. (*See* Filing No. 44-5, Nov. 8, 2017 Recording). However, later in the call, the following exchange takes place:

| | |
|---|---|
| Jones: | Um, what--you said T-Mobile [for the collection account], but what third-party company are you? |
| Agent: | We're an accounts receivable company; T-Mobile is our client. We take care of all of their accounts. |
| Jones: | You said account receivable? |
| Agent: | Yes. |

(*Id.*). The problem, as shown by Jones's testimony and the recorded call, is that ERC sometimes identified itself as "ERC" and other times as "account receivable." Meaningful disclosure means simply more than providing the information; it means providing the information in a way that a consumer is likely to understand it. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) (noting compliance with the FDCPA requires more than simply including information in some

8

unintelligible form).[2] ERC may have complied, here, but a jury should make that determination rather than the court. *See Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) (noting district judges are not good proxies for whether an unsophisticated consumer would understand a disclosure).

### C. Validation Claim

Turning now to Jones's validation claim, Section 1692g requires debt collectors to send the consumer a written notice containing certain information related to the debt. *See* 15 U.S.C. § 1692g(a); *see also Lavallee*, 932 F.3d at 1054. The written notice must be mailed within five days of the initial communication. *Id.* Although a debt collector must send the notice to a valid address, *Ponce v. BCA Financial Services, Inc.*, 467 F. App'x 806, 807 – 08 (11th Cir. 2012), it does not have to ensure the debtor actually receives the notice. *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201 – 02 (9th Cir. 1999).

Here, ERC complied with Section 1692g(a). ERC sent Jones a settlement letter on May 24, 2017. (*See* Filing No. 44-6, ERC's May 24th Letter). ERC mailed the letter within five days of its initial communication, and the letter includes all of the disclosures required by Section 1692g(a). (*See id.*; Landoll Dec. ¶ 23). The letter was sent to "Tonya Polk[3] XXXX E. Court Ave., Jeffersonville, IN 47130-4360." (ERC's May 24th

---

[2] Admittedly, *Janetos* involved a claim under Section 1692g(a)(2), which concerns written disclosures. But the court cannot think of any reason why written disclosures would have different standards than verbal disclosures, and so the reasoning of *Janetos* is applicable here.
[3] Tonya Polk was Plaintiff's name before she changed it back to Tonya Jones (maiden name). (Jones Dep. 8:10 – 17).

9

Letter). The letter was never returned as undeliverable, and ERC had no reason to second-guess the address generated by TLO.[4] (Landoll Dec. ¶ 23). All of this shows ERC satisfied the written notice requirements under the statute. *Mahon*, 171 F.3d at 1201 – 02 (holding debt collector satisfied Section 1692g when it sent the letter to the debtor's home through its ordinary business practices even though the debtor never actually received the letter).

    Jones offers a few reasons why this claim should go to a jury. None are persuasive. First, she argues that ERC did not turn over the *back* of the letter—which contained the required disclosures—until summary judgment, and so the court should strike the back of the letter and grant summary judgment in *her* favor. However, the late disclosure did not prejudice Jones. *See* Fed. R. Civ. P. 37(c)(1) (party may use evidence it failed to disclose when such failure is harmless). Why? The question of whether the letter contained the disclosures is a simple question of law: either it did, or it did not. The back of the letter here mirrors the statute almost verbatim, and there is nothing Jones could have done with the benefit of more time to controvert the disclosures or to create a question for the jury. (*See* ERC's May 24th Letter); *cf. Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004) (late disclosure of expert in a medical malpractice case deemed prejudicial). The only difference the late disclosure makes is that the claim survived longer than it should have. That is not prejudice that warrants striking the letter.

---

[4] TLO is a vendor that ERC uses to gather debtors' contact information. (Landoll Dec. ¶ 9). ERC has employed TLO for nearly four years, and TLO is well regarded in the industry. (*Id.*).

Jones also argues that ERC did not send the letter to a proper and valid address because ERC sent the letter to "Jefferson" Indiana instead of "Jeffersonville" Indiana. True, Rocky Landoll, the legal director for ERC, says in one paragraph of his declaration that the letter was sent to "Jefferson." (Landoll Dec. ¶ 23). But the *actual* letter is addressed to "Jeffersonville," and Landoll explained earlier in the declaration that the address TLO generated for Jones was "XXXX E. Court Ave., Jeffersonville, IN 47130." (ERC's May 24th Letter; Landoll Dec. ¶ 10). No reasonable jury could conclude that "Jefferson" was anything other than a typo.

Finally, Jones argues the Jeffersonville address was not a valid or proper address because there is no evidence that she would have actually received the letter at that address. (Jones's Response at 18 – 19). Yet there is evidence that Jones once resided at the Jeffersonville address, and Jones was homeless when ERC attempted to collect the debt.[5] (Jones Dep. 19:23 – 25; 37:3 – 13). Moreover, there is evidence that ERC employed a third-party (TLO) to scrub the internet to obtain Jones's contact information; ERC had no reason to doubt that information; and ERC never received notice that the letter was undeliverable. (Landoll Dec. ¶¶ 8 – 10, 23); *see also Glynn v. Midland Funding, LLC*, No. 2:16–cv–02678–ODW–SK, 2018 WL 2021360, at *6 (C.D. Cal. Apr.

---

[5] Jones explained she was actually homeless between July 2014 and December of 2016, and she lived at 822 Colonial Park Drive, Apartment 1 as of May 2017. (Jones Dep. 74:9 – 75:10). However, it is undisputed that she told ERC she was homeless and once lived at the Jeffersonville address. (*Id.* at 19:23 – 25; 37:3 – 13). She also testified that she was evicted from the 822 Colonial Park Address. (*Id.* 75:11 – 23). Her testimony related to the Colonial Park Address is not enough to create a question of fact as to whether the Jeffersonville address was invalid, otherwise it would be near impossible for ERC to comply with the FDCPA.

11

27, 2018) (courts must consider evidence of debt collector's procedures and whether the letter was returned as undeliverable when a consumer argues the address was incorrect). Even though Jones may not have actually received the letter, no reasonable jury could find that ERC failed to comply with Section 1692g. *Mahon*, 171 F.3d at 1201 – 02; *see also Grant v. Unifund CCR Partners*, 842 F.Supp.2d 1234, 1241 (C.D. Cal. 2012) (citations omitted) (debt collector complied with Section 1692g when it sent letter pursuant to its procedures and the letter was not returned as undeliverable).

## IV. Conclusion

For the reasons set forth above, ERC's Motion for Summary Judgment (Filing No. 43) is **GRANTED IN PART** and **DENIED IN PART**. ERC's Motion is **GRANTED** with respect to Jones's claims under Sections 1692c(a)(1), 1692f, 1692f(1), and 1692g. ERC's Motion is **DENIED** with respect to her claims under Sections 1692d, 1692d(2), 1692d(5), and 1692d(6). Jones's Motion for Leave to File Supplemental Authority (Filing No. 50) is **DENIED as MOOT**.

**SO ORDERED** this 17th day of September 2019.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.